AUDREY STRAUSS
United States Attorney for
the Southern District of New York
By: Jacob R. Fiddelman
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-1024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

UNITED STATES OF AMERICA,                 VERIFIED COMPLAINT FOR
                                   :   FORFEITURE

               Plaintiff,

                                   :   21 Civ.
      v.

                                   :   ECF case

$66,272 IN UNITED STATES CURRENCY,

              Defendant-*in-rem*.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff United States of America, by its attorney, Audrey Strauss, United States

Attorney for the Southern District of New York, for its verified complaint alleges, upon

information and belief, as follows:

## I.    JURISDICTION AND VENUE

1.    This is a civil action *in rem* commenced by the United States of America

seeking the forfeiture of $66,272.00 in United States currency (the "Defendant Currency") seized

on or about June 29, 2020. The Defendant Currency is subject to forfeiture pursuant to Title 21,

United States Code, Section 881(a)(6), as moneys, negotiable instruments, securities, or other

things of value furnished or intended to be furnished by any person in exchange for a controlled

substance and all proceeds traceable to such an exchange, or intended to be used to facilitate any

violation of Subchapter 1, Chapter 13 of Title 21 of the United States Code.  The Defendant Currency is also subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in violation of Title 18, United States Code, Section 1956 (money laundering), or property traceable thereto.

2.      The Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.      Venue is proper under Title 28, United States Code, Sections 1355(b) and 1395, because acts and omission giving rise to the forfeiture took place in the Southern District of New York.

4.      The Defendant Currency is presently in the custody of the United States Drug Enforcement Administration ("DEA").

## II.      PROBABLE CAUSE FOR FORFEITURE

5.      Since in or about 2019, the DEA has been investigating a drug trafficking organization ("DTO") which was involved in transporting heroin from Afghanistan to the New York City metro area.  In or about late 2019, investigators learned of a shipment of approximately five kilograms heroin, which the DTO intended to ship to the New York City area for sale to buyers and subsequent redistribution.

6.      As part of that investigation, an undercover law enforcement officer ("UC-1") posed as someone with access to that heroin in New York City, who was offering it for sale to others for distribution. As part of these undercover efforts, UC-1 had several telephone conversations with a suspected overseas member of the DTO regarding that person's efforts to identify buyers for the heroin, and to put such buyers in contact with UC-1. A phone number for UC-1 was provided to various individuals looking to purchase heroin.  Unbeknownst to the

members of the DTO, the heroin was seized by foreign authorities before reaching its intended destination.

7.      On or about June 4, 2020, UC-1 received an incoming telephone call from a certain phone number ("Phone 1"). UC-1 did not at first answer the call from Phone 1, but later returned the call to Phone 1. The person who answered Phone 1 referred to himself as "Frank." In this and other calls between UC-1 and Frank at Phone 1, Frank indicated, in substance and in part, that he wanted to meet with UC-1 to test the heroin for quality.

8.      In subsequent phone calls between UC-1 and Frank, a meeting was scheduled for June 10, 2020 at Roberto Clemente Park in the Bronx, New York (the "Park") between UC-1 and an associate of Frank.  Frank told UC-1 that at the pre-arranged time, his associate would be arriving in a black Mercedes SUV.

9.      At the prearranged time, UC-1 and other law enforcement officers arrived at the Park. UC-1 was carrying a black bag containing two brick shaped packages of sham narcotics packaged in plastic wrap in a manner consistent with the common practice of packaging kilograms of heroin.  At approximately 6:39pm, UC-1 received a phone call from Frank using Phone 1, who indicated that his associate was at the front of the Park. At about the same time, a black Mercedes SUV (the "Vehicle") arrived at the Park.  During his call with Frank, UC-1 could hear Frank simultaneously talking on a second cellphone to his associate, and relaying information from UC-1 to the associate.

10.      After a few moments, an individual later identified as Uzoma Bonaventure Dire ("Dire") exited the Vehicle and approached UC-1 and said that he was there to pick up a sample. UC-1 said that he couldn't provide a sample but offered Dire "two" -- indicating two kilograms of heroin -- and stated that if Frank didn't like the product he could return it. Dire looked

inside the bag that UC-1 had containing the sham kilograms of heroin and placed a call to Frank

to advise Frank that UC-1 was offering two kilograms for sale rather than a sample. Dire then took

possession of the bag containing the sham kilograms and returned to his Vehicle, indicating that

Frank had authorized Dire to accept the two kilograms of heroin.

11.     At this time, law enforcement officers approached Dire using police lights

and visual police markings on their clothing. Upon seeing the police, Dire attempted to run, but

was apprehended and detained.

12.     While he was detained, Dire told the officers that he knew there were

narcotics in the bag he had taken from UC-1, but claimed not to know what type of drug it was.

He also indicated that he was going to be paid for his involvement in this transaction.

13.     During this detention, Dire received an incoming phone call from someone

Dire said was Frank. Law officers observed Dire's phone, which indicated the phone number that

Frank called from was saved to Dire's phone under the name "Nzlo" ("Phone 2").  Dire answered

the call in the presence of law enforcement and permitted them to listen to the conversation, parts

of which were in English and parts of which were in a foreign language, but Dire did not inform

Frank of his apprehension. During the English portion of the call, Frank could be heard telling

Dire that he would call again to hand off the narcotics to another person.

14.     Based upon a review of law enforcement and public databases, Phone 2 was

identified as belonging to an individual named Nzelo Okafor ("Okafor") at a particular address in

Reseda, California, believed to be the residence of Okafor ("Address-1").  Phone 2 was also

previously associated with the name Okafor at a particular address in Tarzana, California, which

is believed to be a previous residence of Okafor ("Address-2").

15.     Based on a review of business records from the service provider of Phone 1, law enforcement learned that Phone 1 is associated with an individual named "Frank Jones" at Address-2.

16.     Pursuant to a judicially authorized warrant, beginning on or about June 12, 2020, law enforcement began surveilling real-time GPS of Phone 1 and Phone 2. Based on these records, it appeared that Phone 1 and Phone 2 were almost always located together and appeared to travel together. At the infrequent times when they were not located together, one or the other would remain stationary at Address-1, while the other phone moved to a different location. This type of activity is indicative that both phones belonged to the same person, residing at Address-1.

17.     On or about June 26, 2020, a sealed criminal complaint was filed in the United States District Court in the Southern District of New York under case number 20 Mag. 6727, charging Dire and Okafor with narcotics conspiracy, in  violation of Title 21, United States Code, Section 846.  At the same time a warrant was issued for the arrest of Okafor.

18.     On or about June 29, 2020, cell phone GPS data obtained on Phone 1 and Phone 2, revealed that Okafor was located at a particular address in Las Vegas, Nevada ("Address-3"). Law enforcement officers from the Drug Enforcement Administration Las Vegas District ("DEA/LVD"), with operational assistance from local law enforcement officers from the Las Vegas Metro Police Department ("LVMPD"), established surveillance of Address-3. At approximately 5:05pm, officers observed an individual matching Okafor's description exiting a restaurant.  A white BMW sedan arrived ("Vehicle 2") and officers observed the individual walk towards the back of it. The trunk opened and the individual placed a black bag into the trunk.  At this time, law enforcement approached this individual with police markings clearly displayed, identified themselves as police officers and asked the individual for identification.  The individual

provided officers with a California driver's license which confirmed his identity as Nzelo Okafor. Okafor was then placed under arrest and taken into police custody.

19.     During his arrest, officers conducted a search of Okafor, and recovered a large amount of United States currency from: a) his left front cargo pants pocket; b) his wallet; and c) his backpack which he was still carrying.  Additionally, officers searched the black bag Okafor had earlier been observed placing into Vehicle 2 and recovered an additional amount of United States currency.   The total amount recovered from Okafor and his bags was $66,272 (the "Defendant Currency").

20.     Officers also recovered two cell phones from Okafor and confirmed that they corresponded to Phone 1 and Phone 2.  Officers also recovered miscellaneous banking receipts and paperwork.

21.     A review of the criminal history records of Okafor revealed that he has multiple prior narcotics convictions in both state and federal courts. The Government does not have any verified information reflecting legitimate sources of income from which the Defendant Currency could be derived.

22.     During this same time, the driver of Vehicle 2 was identified as David Miller. At first Miller stated that he was just an Uber driver and did not know Okafor. However, Miller was carrying multiple identification cards bearing his photograph with different names. He was also in possession of various credit cards bearing different names.  At this time, Miller stated to local LVMPD officers that he had been driving around with Okafor, and that he had deposited Okafor's cash into various bank accounts at different banks. LVMPD officers arrested Miller in connection with his possession of fraudulent identification documents.

23.    Following Okafor's arrest, a grand jury sitting in the Southern District of New York returned an Indictment 20 Cr. 373 (LAK) (the "Indictment") against Okafor and Dire, charging them both with narcotics conspiracy, in violation of Title 21, United States Code, Section 846. On or about March 15, 2021, pursuant to a plea agreement with the Government, Okafor pled guilty to Count One of the Indictment.

### III.    FIRST CLAIM FOR FORFEITURE

24.    Incorporated herein are the allegations contained in paragraphs One through Twenty-three of this Complaint.

25.    Pursuant to Title 21, United States Code, Section 881(a)(6), all moneys furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate such an exchange, in violation of Subchapter I of Title 21 of the United States Code, are subject to seizure and forfeiture to the United States, and no property right exists in such proceeds.

26.    The Defendant Currency is therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) because it constitutes moneys intended to be furnished in exchange for a controlled substance, and/or proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate such an exchange, in violation of Subchapter I of Title 21 of the United States Code.

### IV.    SECOND CLAIM FOR FORFEITURE

27.    Incorporated herein are the allegations contained in paragraphs One through twenty-six of this Complaint.

28.    Title 18, United States Code, Section 981(a)(1)(A) subjects to civil forfeiture:

Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

18 U.S.C. § 981(a)(1)(A).

29.     Title 18, United States Code, Section 1956 provides that

[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

. . .

(B) knowing that the transaction is designed in whole or in part—
(i)   to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity
[shall be punished as set forth in this Section].

18 U.S.C. § 1956(a)(1)(B)(i).

30.     By reason of the foregoing the Defendant Currency is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of section 1956 of this title, or any property traceable to such property.

## V.      CONCLUSION

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Currency and that all persons having an interest in the Defendant Currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated:  New York, New York
        June 14, 2021

                              AUDREY STRAUSS
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the Plaintiff
                              United States of America

        By:   _____
                              Jacob R. Fiddelman
                              Assistant United States Attorney
                              One St. Andrew's Plaza
                              New York, New York 10007
                              Tel No. (212) 637-1024

**DECLARATION OF VERIFICATION**

RAYMOND E. MCGRATH, pursuant to Title 28, United States Code, Section

1746, hereby declares under penalty of perjury that he is a Special Agent with the United States

Drug Enforcement Administration; that he has read the foregoing Verified Complaint and knows

the contents thereof; that the same is true to the best of his knowledge, information and belief; and

that the sources of his information and the grounds of his belief are his personal involvement in

the investigation, and conversations with and documents prepared by law enforcement officers and

others.


Executed on June 14, 2021

Raymond E. McGrath
Special Agent
Drug Enforcement Administration